CHARLES DUNN v. JOHN F. CARTER.

SALE OF GOODS—*Laws of United States Unviolated.* C. had a license to trade with the Indians upon the Pottawatomie reservation in this state. Being of limited means, and not having the credit to buy the goods needed to prosecute his business, through the assistance of plaintiff he formed a partnership with one D., a son of plaintiff, under an arrangement that plaintiff would sell goods from his store at Topeka to the firm, and the firm would dispose of the goods under the license, and in the name of C. upon the reservation. C. obtained a permit from the government for D. to live upon the reservation, and D. took charge of the store operated in C.'s name. *Held,* The sale of the goods at Topeka by the plaintiff to C. or the firm was not in violation of the laws of the United States, or contrary to public policy.

*Error from Shawnee District Court.*

ACTION brought by *Dunn* against *Carter* to recover $674.93, for goods sold and delivered. Trial at the January Term, 1881,

of the district court, before N. C. McF., judge *pro tem.* presiding, and a jury. Verdict and judgment for defendant. *Dunn* brings the case here.

*Case & Moss,* for plaintiff in error.

The opinion of the court was delivered by

HORTON, C. J.: Action by plaintiff against the defendant to recover the sum of $674.93, for goods sold and delivered. The question in the case arises upon the third instruction of the court, which was:

"3. If you find that the goods mentioned in the petition were sold by the plaintiff to the defendant and one J. A. Dunn as partners, the purpose of which partnership was to sell goods to the Indians on the Indian reservation; that the said John F. Carter had a license from the government of the United States to sell goods on said reservation, and that the said J. A. Dunn had no such license; that the said goods were taken to said reservation and sold to the Indians and others under the name of the firm, or the name of Carter alone, or any other name, and that the plaintiff Charles Dunn assisted his son J. A. Dunn to form said partnership with the intention of selling the goods to said firm for the purpose aforesaid, and did so sell the goods to them, then I say to you that such partnership and the business to be conducted under it was in violation of the laws of the United States, and therefore illegal and void, and the plaintiff in this action cannot recover for any of the goods so sold and delivered."

The defendant has not filed any brief or presented any oral argument in support of the ruling and judgment of the district court; but from an examination of the Revised Statutes of the United States (1873–4) the sections relied upon to support the instruction given, we suppose, are:

"SEC. 2128. Any loyal person, a citizen of the United States, of good moral character, shall be permitted to trade with any Indian tribe upon giving bond to the United States in the penal sum of not less than five nor more than ten thousand dollars, with at least two good sureties, to be approved by the superintendent of the district within which such person proposes to trade, or by the United States dis-

trict judge or district attorney for the district in which the obligor resides, renewable each year, conditioned that such person will faithfully observe all laws and regulations made for the government of trade and intercourse 'with the Indian tribes, and in no respect violate the same.

"SEC. 2129. No person shall be permitted to trade with any of the Indians in the Indian country without a license therefor from a superintendent of Indian affairs, or Indian agent or sub-agent, which license shall be issued for a term not exceeding two years for the tribes east of the Mississippi, and not exceeding three years for the tribes west of that river. . . .

"SEC. 2133. Any person other than an Indian who shall attempt to reside in the Indian country as a trader, or to introduce goods or to trade therein without such license, shall forfeit all merchandise offered for sale to the Indians, or found in his possession, and shall moreover be liable to a penalty of five hundred dollars."

Notwithstanding the provisions of these and other sections of the statute relating to the government of the Indian country, we do not think the law was properly declared in the instruction. The defendant had a license authorizing him to trade with the Pottawatomie Indians upon their reservation, and he obtained a permit for J. A. Dunn to live upon the reservation; therefore neither was the defendant nor J. A. Dunn an intruder on the reservation, nor were they engaged in selling any contraband or interdicted articles. Even if J. A. Dunn were a partner of defendant, he was to all intents and purposes an agent. If the plaintiff assisted his son to form the partnership with the defendant with the intention of selling goods from his store in Topeka to the firm, to be disposed of to the Indians under the license of the defendant, that would not defeat his recovery for the goods, as neither the statute nor public policy would avoid the sales. All the business was carried on in the name of the defendant, and the sales were made in his name and for his sole benefit, less the profits received by J. A. Dunn.

From the evidence upon which the instruction was based, it does not appear that the plaintiff designed to violate the

statute, or have the firm dispose of the goods outside of the license issued to the defendant. It would seem that the principal purpose of the plaintiff in making his arrangements with the defendant was to sell all the goods needed by the defendant as Indian-trader of the Pottawatomies, to secure his pay for the goods so sold, and have his son share in the profits of the trader as compensation for his services. We suppose it will be conceded, if the defendant had purchased the goods and merchandise set forth in the account at Topeka, and with the permission of the government had employed J. A. Dunn as his clerk or agent to take charge of the store on the reservation and sell the goods and collect the pay therefor, no violation of the statute could be alleged. Now the arrangement which was made and carried out, so far as the government was concerned, was not very much different from this. Instead of J. A. Dunn's acting merely as clerk or employé of the defendant, he was a partner with the defendant, and upon the reservation with the permission of the government. The goods were sold under the license of the defendant and in the name of the defendant, and the government was protected by the bond of the defendant.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.